IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE HARROLD, )
)
)
Plaintiff, )
) 2: 17-CV-592
vs. )
)
)
NANCY A. BERRYHILL, )
Defendant, )

MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the defendant's motion (ECF No.15) will be granted; the plaintiff's motion (ECF No.11) will be denied, and the decision of the Commissioner will be affirmed.

On May 9, 2017, Michelle Harrold, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On December 4, 2013 the plaintiff filed an application for disability benefits alleging that she had been disabled since October 7, 2012 (R.146), and benefits were denied on February 20, 2014 (R. 80-84). On February 26, 2014, the plaintiff requested a hearing (R.85-86), and pursuant to that request a hearing was held on October 22, 2015 (R.30-64). In a decision dated December 16, 2015, benefits were denied (R.14-24) and on December 9, 2015, reconsideration was

requested (R.9). Upon reconsideration and in a decision dated March 2, 2017, the Appeals Council affirmed the prior determination (R.1-3). On May 9, 2017, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir. 2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999).

At the hearing held on October 22, 2015, (R.30-64), the plaintiff appeared with counsel (R.32) and testified that she earned a G.E.D. (R. 36); that she was 46 years old (R.33); that she last worked in October, 2012 and stopped working because of migraines (R.36-37).

The plaintiff also testified that she experiences daily migraines (R.48); that she does not leave her house except to visit her sister every few months or perform any household chores (R.40-41); that she has a history of lower back problems (R.41-42, 56); that she has experienced depression since 2012 (R.46,48); that she receives trigger-point injections for migraines every other month and experiences a little relief (R.46); that she lays down for two to four hours a day

(R.47,55); that she takes medication for back pain, depression and headaches (R.47-50); that she attends therapy for her depression (R.52); that she smokes a pack of cigarettes a day (R.54) and that she can sit for 15 to 20 minutes (R.56).

At the hearing a vocational expert was called upon to testify (R.59-63). He classified the plaintiff's past work as unskilled medium exertional warehouse work (R.60). When asked to assume an individual of the plaintiff's age, education and prior work experience who was limited to sedentary work in a controlled environment, he testified that such an individual could not perform the plaintiff's prior work (R.60-61), but could perform a substantial number of other jobs that exist in the national economy even if requiring a sit/stand option (R.61-62). The witness also testified that any employee could not fall 10 to 15 percent below the productivity level (R.63).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists

3

in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. <u>NLRB v. Staiman Brothers</u>, 466 F.2d 564 (3d Cir. 1972); <u>Choratch v. Finch</u>, 438 F.2d 342 (3d Cir. 1971); <u>Woods v. Finch</u>, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated by Dr. William Weisel between September 18, 2011 and September 25, 2012 for migraines. Medication was prescribed (R.229-249).

The plaintiff was treated by Dr. Sarfraz Ahmad between September 17, 2013 and September 19, 2013 for benign polyps of the large intestine, diarrhea and gastritis. The polyps were removed (R.250-260).

The plaintiff was treated by Dr. Zaitoon Mohammad between October 17, 2013 and October 28, 2013 for stress incontinence. A sling procedure was discussed (R.287-302).

4

Outpatient records from Frick Hospital for the period from September 23, 2011 and October 28, 2013 disclose moderately severe stress urinary incontinence for which a mid-urethral sling was placed and transverse colon polyps were removed (R.261-286).

In a report of a psychiatric evaluation conducted on January 28, 2014, Margaret Boerio D.O. diagnosed a major recurrent depressive disorder, migraines and gastroesophageal reflux disease. The plaintiff's prognosis was reported to be fair. The plaintiff was said to have moderate limitations with public interaction as well as with supervisors and co-workers (R.350-361).

In a headache residual functional capacity report completed on February 13, 2015, Dave Regalla, PA reported that the plaintiff complained of daily headaches some of which develop into migraines triggered by bright light and lack of sleep. Her condition was described as chronic and likely to present indefinitely. The plaintiff was said to be capable of low stress jobs (R.362-367).

In a mental residual functional assessment completed on February 25, 2015, Patricia Clark, LCSW estimated that the plaintiff would be absent from work or unable to complete an 8-hour workday on five or more days a month due to migraines and depression (R.368-371).

The plaintiff was treated at Connellsville Counseling and Psychological Services between November 11, 2013 and August 5, 2015. A recurrent major depressive disorder was diagnosed as well as migraines (R.303-326, 342-349, 385-475).

In a report from Frick Hospital for the period from July 10, 2014 through August 13, 2015 , it is noted that an endoscopy demonstrated mild esophagitis, non-erosive gastritis and a hiatal hernia (R.476-481).

The plaintiff was treated at Main Street Medical from July 30, 2015 through August 13, 2015 for non-radiating back pain. Degenerative facet arthropathy at L4-5 and L5-S1 were noted (R.489-505).

The plaintiff was treated by Dr. Louis Catalano between December 4, 2012 and August 18, 2015 for headaches. Trigger point injections were administered as well as medication prescribed (R.327-341, 506-520).

The plaintiff had an MRI at Highlands Hospital on August 26, 2015 which revealed an enhancing defect in the annulus at L5-S1 and mild degenerative disease at L4-L5 (R. 521-522).

The plaintiff was treated for low back pain between August 18, 2015 and September 1, 2015 by Greg W. Hites, DNP (R.482-488).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law

6

Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

> The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> The claimant has not engaged in substantial gainful activity since October 7, 2012, the alleged onset date.
>
> The claimant has the following severe impairments: migraine headaches; degenerative disc disease with previous lumbar spine surgery; and chronic pain syndrome…
>
> The claimant's medically determinable mental impairments of major depressive disorder and generalized anxiety disorder, considered singly and in combination,

do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore non-severe…

The first functional area is activities of daily living. In this area, the claimant has mild limitation…

The next functional area is social functioning. In this area, the claimant has mild limitation…

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation…

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are non-severe…

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work … except that she is further limited to occasional climbing of ramps and stairs and never ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extremes of heat and cold…

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible …

The claimant has a history of migraine headaches with photophobia, dizziness, lightheadedness, nausea, and vomiting. She has also been diagnosed with chronic pain syndrome. She has reported that she has had intermittent headaches since the age of 8, but that they worsened in late 2012… [S]he has stated that she has been doing quite well with her pain since starting OxyContin. Furthermore, Botox has been recommended as a treatment for headaches, but she refused. Despite her reports of constant headaches, the claimant appears as alert, pleasant, and oriented. She demonstrates good attention span and concentration and normal coordination, muscle strength, tone, sensory exam, deep tendon reflexes and gait. A record from July 2015 characterizes her headaches "stable."

The claimant has been diagnosed with degenerative disc disease of the lumbar spine. She has a history of bulging disc and surgery in 2007, which it is noted adequately relieved her pain at that time. She reported increased pain in her back after falling off a picnic table on July 4, 2015... An MRI shows that the claimant has "mild" degenerative disease at L4-L5. She has a broad-based posterior disc protrusion, eccentric to the left, along with facet joint and ligamentum flavum hypertrophy resulting in bilateral lateral recess and foraminal narrowing. L5 nerve root impingement within the left lateral recess is not excluded.

On August 18, 2015, the claimant demonstrated an antalgic gait, positive straight leg raise test, positive right sacroiliac joint tenderness on palpation, and positive lumber facet loading on lumbar extension. However, it is noted this is the first instance since the alleged onset date that these positive findings have been recorded… Notations contained in the record that she has undergone conservative care, including physical therapy and the use of TENS refer to treatment that she underwent prior to 2007 surgery. Thus, the treatment records show that the claimant has a history of back pain and a back surgery which predates the alleged onset date and which has largely been under control since the alleged onset date. She reported increased pain after falling off a picnic table in July 2015 and was prescribed Mobic. Physical therapy for a period of 6 weeks was recommended to provide lumbar spine stabilization and core strengthening. Additionally, she was advised to be as active as possible…

After a review of the record as a whole, the undersigned finds that the claimant's allegations are partially credible. Although the claimant's allegations of headaches are well-documented in the record, the record does not show that this condition is as limiting as she alleges… With respect to her back condition, it is noted that the evidence contains little treatment for a complaint about this condition during the adjudicated period prior to the exacerbation of her pain in July 2015. In August 2015, physical therapy was recommended, but the record does not show that she has engaged in this treatment, which suggests that her back pain is not as limiting as alleged. Further, despite any durational factors that may relate to this incident occurring in July 2015, the evidence was viewed in the light most favorable to the claimant in assessing a sedentary exertional level with alternating sit/stand opinion into the residual functional capacity.

The undersigned gives partial weight to the opinion of Dr. Margaret Boerio, a psychiatrist … Dr. Boerio's opinion that the claimant has no more than mild limitations with understanding, remembering, and carrying out complex instructions and with making judgments on complex work related decisions is supported by the record as a whole, including the mental status evaluation… However, Dr. Boerio's opinion that the claimant has moderate restrictions with interacting appropriately with the public, supervisors, and co-workers is not supported by the evaluation, which showed that the claimant related adequately, was cooperative and pleasant, and exhibited intact judgment and insight.

Furthermore, the treatment records also do not suggest more than mild limitations with social functioning… For the same reasons, the undersigned gives little weight to the State agency psychological consultant's opinion that the claimant has moderate mental limitations…

Dave Regalla's opinion that the claimant would be absent from work about four times each month and that she would need to take unscheduled breaks due to symptoms caused by headaches is given little weight. This record appears to be based primarily on subjective complaints and is not supported by the clinical findings. As noted above, despite her reports of constant headaches, the claimant demonstrates good attention span and concentration and normal coordination, muscle strength, tone, sensory exam, deep tendon reflexes, and gait…

The opinion of Patricia Clark, LCSW, that the claimant's mental impairments cause multiple symptoms that would preclude performance for 15 percent or more of an 8-hour workday, is given little weight… However, the record includes several notations that the claimant presents as "fairly cheerful" or "fairly bright" and that she was joking and exhibited a euthymic mood… Her depression worsens when she is off her medication, but for the most part she has been compliant with taking her medication and has exhibited euthymic mood on exam. A record … noted few specific stressors related to family members, but also notes that the claimant appears to have been handling her problems reasonably well… There are several other notations that indicate that the claimant was "doing well" or "doing fairly well" …

While none of these factors are dispositive for disability, when considered as a whole, they tend to suggest that claimant is less limited than alleged. In sum, the above residual functional capacity is supported by the evidence as a whole. For the reasons set forth above, the claimant's subjective complaints are only partially credible… Accordingly, I find that the claimant can do work subject to the above residual functional capacity at a level consistent with the regular and continuing performance of substantial gainful activity…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

The claimant has not been under a disability … from October 7, 2012, through the date of this decision…

(R.16-24).

In her motion for summary judgment, Plaintiff argues that the descriptions of the representative jobs relied upon by the vocational expert in this case are antiquated and, therefore,

unreliable (ECF No. 12, pg. 5-9). Here, the vocational expert identified the following representative jobs from the DOT that could be performed by plaintiff: Document Prep, Addresser, and Table Worker (R. 61). Plaintiff argues that, because, for example, the job of Addresser contemplates use of a typewriter, it is unreasonable to believe that 5,000 positions currently exist nationally.[1] However, the "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT]." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing 20 C.F.R. § 416.966(d)). Moreover, these positions are intended to be representative. Thus, the fact that word-processing has advanced does not render unreliable the ALJ's conclusion that a sufficient number of representative sedentary jobs with an SVP of 2 are available to plaintiff in the national economy.

To the extent that plaintiff argues that the ALJ failed to meet his burden because "the VE testified that only 1,700 table worker jobs exist," which is far from "significant" (ECF No. 12, pg. 10), the Court notes that the ALJ satisfies his burden under step five by identifying at least one occupation with a significant number of jobs in the national economy that plaintiff can perform. See Wilkinson v. Comm'r of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)). Thus, even if the Court agreed with plaintiff that 1,700 jobs nationally is insignificant, the testimony relied upon by the ALJ demonstrates that the other two representative jobs had approximately 32,000 positions and 5,000, respectively. Accordingly, the Court finds no error in the ALJ's determination.

The record demonstrates that while the plaintiff has alleged many ailments to support her disability claim, there is little if any evidence substantiating her claim of the severity of these

---

[1] The Court notes that, although not argued by the parties, the plaintiff's preferred source for job description data, O*NET, contains "modern" equivalents for each representative job listed by the VE in this case.

ailments. Rather the record appears to support the conclusion of the Commissioner that these ailments individually or in combination do not support a finding of disability. The Commissioner is charged with determining issues of credibility, Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir. 2009). Since the Administrative Law Judge clearly identified the bases for reaching his credibility determinations, they are supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. McMunn v. Babcock, 869 F.3d 246 (3d Cir. 2017). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, the defendant's motion for summary judgment (ECF No. 15) will be granted; that the plaintiff's motion for summary judgment (ECF No. 11) will be denied and the decision of the Commissioner be will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 1ˢᵗ day of February, 2018, for the reasons set forth in the foregoing Memorandum,

IT IS ORDER that the defendant's motion for summary judgment (ECF No. 15) is granted; that the plaintiff's motion for summary judgment (ECF No.11) is denied and the decision of the Commissioner is affirmed.

s/ Robert C. Mitchell  
United States Magistrate Judge